# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRACIE B., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 17-CV-7276 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Tracie B. brings this action for judicial review of the Social Security Administration's decision denying her application for Disability Insurance Benefits under the Social Security Act. For the reasons set forth below, this Court remands the SSA's decision for further proceedings consistent with this Order.

## Background

Claimant's application for disability insurance benefits was denied initially, upon reconsideration, and in a July 28, 2016 decision following a hearing held by the ALJ. R. 18. The Appeals Council declined review in August 11, 2017, leaving the ALJ's decision as the final decision of the SSA, reviewable by this Court pursuant to 42 U.S.C. § 405(g). R. 1, 5. The ALJ concluded that Claimant "has not been under a disability within the meaning of the Social Security Act from June 5, 2012, through the date of this decision." R. 21.

## Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," that is, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992)

(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(4)(a)(4). The ALJ must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which disability is claimed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *See id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the onset date. R. 23. At step two, the ALJ determined that Claimant had two severe impairments: cervical myelopathy and cervical radiculopathy. R. 23. The ALJ determined that Claimant's back abnormality – bulging of two lumbar discs – was a non-severe impairment. R. 23-24. At step three, the ALJ determined that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. R. 24. At step four, the ALJ found that Claimant has the residual functional capacity ("RFC") to perform "sedentary work" and can

perform her past relevant work as a branch manager. R. 28.[1] Presumably, the ALJ did not address step five because the ALJ had already concluded that Claimant was able to perform her past relevant work. R. 28. As a result, the ALJ concluded that the Claimant was not disabled. *See* 20 CFR 404.1520(f).

   I.   RFC

Claimant contends that the ALJ failed to identify the evidentiary basis that supported his assessment of Claimant's RFC. Specifically, Claimant argues that the ALJ did not identify evidence that supported the specific functional limitations[2] included in the RFC assessment and therefore the ALJ's conclusion that Claimant's RFC was "sedentary" was inappropriate. Doc. [12] at 6; *see Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("the ALJ did not explain how he arrived at [the RFC and its related limitations]; this omission in itself is sufficient to warrant reversal").

Here, the only medical opinion that the ALJ gave any weight – albeit limited weight – was the state agency medical consultant who reviewed Claimant's medical history. R. 27-28. The state agency medical consultant opined that Claimant retained the RFC to perform work at the light

---

[1] This Court notes that although the ALJ's decision appears to have inadvertently wrote that Claimant's RFC was "less than sedentary work," R. 24, the ALJ's decision as a whole combined with the parties' briefing suggests that the ALJ intended to make an RFC finding of sedentary work. *Compare* R. 26 ("The undersigned has accommodated the claimant's impairments and associated symptoms *by limiting her to sedentary level work* with additional physical limitations as described above.") (emphasis added), *with* R. 28 (finding that Claimant can perform past relevant work as a general manager because it is generally performed at a sedentary level), *and* Doc. [12] at 5 (Claimant's brief recognizing that "[t]he ALJ found that [Claimant] retained the RFC to perform work at the sedentary exertional level"). Accordingly, this Court proceeds with the understanding that the ALJ intended to make a sedentary RFC determination. On remand, the ALJ is directed to clarify its RFC determination.

[2] The RFC's specific limitations are: "She can lift/carry 10 pounds occasionally and less than 10 pounds frequently. She can sit for 6 hours in an 8-hour workday. She can stand/walk for 2 hours. She can push/pull as much as she can lift/carry. She is limited to occasional use of foot controls on the left. She can never reach overhead with the left upper extremity. She can handle and finger occasionally with the left upper extremity. She cannot climb ramps or stairs. She can occasionally climb ladders, ropes, or scaffolds, stoop, kneel, crouch, or crawl." R. 24.

3

exertional level but could occasionally climb ropes, scaffolds, ramps and stairs; could occasionally stop; and could frequently feel, handle, and finger with the left upper extremity. R. 27. The ALJ reasoned that little weight was appropriate because the opinion was made before all the relevant evidence that warranted inclusion of additional functional restrictions was in the record. R. 27-28. But the ALJ did not provide a discussion describing the evidence he relied on in formulating his conclusion otherwise. Because the only available medical opinion evidence was discounted and without having explained the basis for the ALJ's RFC determination otherwise, this Court is unable to ascertain the basis for the ALJ's finding. And so, this Court concludes that the ALJ faced an evidentiary deficit that was impermissibly filled with his own lay opinion. *See, e.g.*, *Suide v. Astrue*, 371 Fed.Appx. 684, 690 (7th Cir. 2010) ("it is the evidentiary deficit left by the ALJ's rejection of his reports—not the decision itself—that is troubling."); *Briscoe ex rel. Taylor*, 425 F.3d at 352 ("the ALJ did not explain how he arrived at these conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision."); SSR 96–8p at *7 ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Accordingly, remand is appropriate so that the ALJ can elaborate how he determined the RFC. On remand, the ALJ is instructed to specifically explain the evidentiary basis for the RFC finding and its related functional restrictions.

### A. Sitting

The ALJ's decision does not explain how he determined that Claimant could sit for 6 hours in an 8-hour workday despite her testimony that she struggled to sit. R. 24; R. 39 (Claimant testifying that she cannot drive for more than two hours because "the longer I sit the more pain I get in my left side, my left arm, my left leg. Numbness, burning in my back."). The ALJ should have addressed his basis for determining that Claimant is able to sit for 6 hours in an 8-hour

workday. For example, the ALJ did not state that its sitting limitation resulted from medical opinions in the record. Indeed, the ALJ did not cite the record in support of this conclusion even though it contains medical opinions suggesting that Claimant can sit for a total of 6 hours in an 8-hour workday. *See, e.g.*, R. 66, 67, 78, 80 (providing that the Claimant can "sit (with normal breaks) for a total of: About 6 hours in an 8-hour workday"). Accordingly, the case is remanded so that the can evaluate and reconcile the medical opinions in the record that suggest Claimant can sit for 6 hours in an 8-hour workday with Claimant's contradictory testimony.

### B. Lying Down

Claimant contends that the ALJ's decision warrants remand because the ALJ did not provide a functional restriction for Claimant's alleged need to lie down between 9:00 a.m. and 5:00 p.m. for "[t]wo to three hours sometimes." R. 55. Claimant's alleged need to lie down for 2 hours per 8-hour workday, or 25% of the workday, is important because the Vocational Expert ("VE") testified that an individual who needed to lie down for 20 percent of a work shift "would be unable to maintain employment." R. 59. The ALJ rejected this alleged functional restriction and reasoned that "laying down daily for 2-3 hours [is] not supported by the medical records." R. 27. Such analysis is insufficient.

If a claimant alleges a functional limitation that requires he or she to lie down for two hours to alleviate pain, the ALJ must address whether the alleged limitation should be incorporated into the RFC as functional restrictions. *See* SSR 96–8p ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."). An ALJ may not discredit testimony solely because there is no objective medical evidence to support it. *See Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) ("[The ALJ's] principal error, which alone would compel reversal, was the recurrent error made by the Social Security Administration's

5

administrative law judges, and noted in many of our cases, of discounting pain testimony that can't be attributed to "objective" injuries or illnesses"); *see also Myles v. Astrue*, 682 F.3d 672, 677 (7th Cir. 2009). In *Myles*, the ALJ committed reversible error by discounting an alleged symptom-related limitation without providing an explanation beyond stating a lack of objective medical evidence. *Myles*, 682 F.3d at 677. Here, like in *Myles*, the only discussion the ALJ gave to Claimant's alleged need to lie down is that "laying down daily for 2-3 hours [is] not supported by the medical records." R. 27. This statement on its own is an insufficient explanation under *Myles*. Therefore, the case must be remanded for further analysis into Claimant's alleged need to lie down for 2-3 hours to alleviate pain.

### C. Claimant's Need to Frequently Alternate Positions

Claimant contends that the ALJ did not explain how he analyzed Claimant's allegation that she needed to frequently alternative positions to relieve pain. Doc. [12] at 10 (citing R. 39). Claimant cites her own testimony that she cannot drive long distances because doing so entails sitting in one place for two hours at a time, a task which she cannot do without frequently alternating positions. *Id.* This Court construes the analysis of Claimant's symptom-related functional limitation of needing to frequently alternate positions while seated to go hand-in-hand with the symptom-related functional limitation discussed above of not being able to sit more than 6 hours per 8-hour work day. As a result, for the same reasons discussed above, this case is remanded so that the ALJ can revisit the RFC with respect to Claimant's alleged need to frequently alternate positions while seated.

### D. Claimant's Tendency to Drop Items Held In Her Left Hand

Claimant also contends that the ALJ did not explain how he evaluated Claimant's allegation that she frequently dropped items that she held in the left hand. *See* Doc. [12] at 10 (citing R. 53). Specifically, Claimant testified that she had difficulty "opening a jar or something

like that, I have a lot more weakness on this side. I drop things. . . . Silverware, you go to pick up, but if I use my left hand I'll -- I'll drop it." R. 53. Although Claimant testified that she had difficulty using her left hand, she testified that she could still use her right hand. *See* R. 53 (Claimant explaining that she can put on earrings or stuff like that with her right hand).

The ALJ addressed Claimant's left hand's issues in his decision. R. 27. The ALJ recognized these alleged impairments of the hand and explained how the Claimant's testimony was inconsistent with the evidence:

> Additionally, the claimant testified to numbness and weakness to her entire hand. She reported burning stabbing pain and muscle tightness on the left side with reaching overhead. She testified to difficulty opening a jar and dropping silverware. However, the medical records showed mild symptoms or improvement following cervical spine surgery. For example, an x-ray of her neck in October 2014 only showed postoperative changes and no abnormalities to her cervical spine discs (Exhibit 5F/155). In January 2015, examination findings showed limited cervico-thoracic spine range of motion and some numbness to the left digits 1-3 (Exhibit 5F/205). However she had full 5/5 motor strength to her cervical and thoracic spine and only minimally reduced 4+/5 motor strength at C7.

R. 27.

As shown above, the ALJ addressed and considered Claimant's alleged hand restrictions. Accordingly, the ALJ's decision with respect to potential RFC restrictions concerning her left hand is supported by the substantial evidence on the record.

### E. Severe Pain

Claimant argues that the ALJ erred by failing to properly assess her allegations of severe pain as part of the RFC determination. Once an underlying impairment that could reasonably be expected to produce an individual's symptoms such as pain is established, the ALJ should evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* SSR 16-3p.

The ALJ applied the appropriate analytical process. *See* R. 24-25. Claimant's suggestion that the ALJ only noted an MRI of the lumbar spine and in turn ignored the MRI of the cervical

spine is incorrect. *Compare* Doc. [12] at 11 ("the ALJ impermissibly ignored the MRI of the cervical spine that reflected disc herniation") *with* R. 25 ("In May 2012, MRI of the cervical spine showed small herniation . . . ."). Claimant goes on to suggest that the ALJ failed to appropriately analyze Claimant's June 2014 operation and therefore failed to make a decision based on the substantial evidence on the record with respect to Claimant's pain, numbness, and weakness. Doc. [12] at 12. But the decision clearly shows that the ALJ did in fact refer to the June 2014 medical visit. *See* R. 26. As the ALJ pointed out, the June 2014 medical visit's report states that "Patient states she is doing okay, the numbness at the left arm has improved since the surgery. States pain is controlled with medications." R. 402; *see also* R. 26. Additionally, the ALJ tracked the Claimant's progress through a January 2016 therapy discharge summary that documented how Claimant was doing better overall. R. 26; R. 605. Accordingly, the ALJ's determination with respect to Claimant's pain is supported by the substantial evidence on the record.

### F. Activities of Daily Living

Claimant contends that the ALJ erred in failing to explain how he considered Claimant's limitations in activities of daily living ("ADL") when he assessed her subjective allegations. Doc. [12] at 12. Specifically, Claimant challenges the ALJ's finding that Claimant's ADL limitations did not constitute strong evidence that Claimant was disabled since the ADL testimony was not objectively verified. Doc. [12] at 12. But a review of the ALJ's decision does indeed show how the ALJ considered Claimant's ADL limitations. The ALJ recognized that Claimant needed to sit down while dressing, leaned against a wall while showering, needed frequent breaks while straightening up her house and doing dishes, and performed minimal chores. R. 27.

Nevertheless, this Court is unable to ascertain whether the ALJ considered Claimant's alleged ADL limitations because the ALJ simply stated that Claimant's ADL were outweighed by other factors. R. 27. Even though the ALJ's subjective symptom evaluation is afforded special

deference, the ALJ should have addressed the alleged ADL evidence rather than broadly dismissing them for lack of verification and as "difficult to attribute" as opposed to other sources. *See* SSR 16-3p; *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (highlighting the importance of ADL analysis by noting that "[t]he critical differences between [ADL] and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer."); *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010) (noting an ALJ's subjective symptom evaluation is afforded "special deference."). Accordingly, the ALJ is instructed on remand to analyze Claimant's alleged ADL evidence.

### G. Side Effects from Prescription Medications

Claimant also argues that the ALJ erred in failing to explain how he considered Claimant's side effects from prescription medications. Doc. [12] at 13. In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, an ALJ should consider the "side effects of any medication an individual takes or has taken to alleviate pain or other symptoms." SSR 16-3p; *see also* CFR 404.1529(c)(3)(iv). Here, Claimant points to her own testimony that her medications impaired her focus and caused her to feel groggy, tired, and sleepy, R. 45, and suggests that the ALJ "did not explain why it was unreasonable to find that [Claimant] did not, in fact experience these side effects as a result of the medication that she used to treat her pain." Doc. [12] at 14. But the ALJ did recognize Claimant's side effects: "She testified to medication side effects of trouble focusing, tiredness, 'grogginess', and tiredness." R. 27. The ALJ's acknowledgement of Claimant's side effects does not suggest that the ALJ determined Claimant's side effects to be unreasonable. Rather, it suggests that the ALJ did in fact consider Claimant's alleged side effects in evaluating the intensity, persistence, and limiting effects of Claimant's symptoms. Accordingly, remand with respect to the ALJ's analysis of Claimant's medication's side effects is not necessary.

9

## II. Past Relevant Work

Claimant next contends that the ALJ erred in finding that Claimant could perform past relevant work as a branch manager. To be found disabled under the law, an individual must have a medically determinable impairment(s) of such severity that he or she is not only unable to do his or her previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. SSR 82-62. Here, the ALJ found Claimant capable of performing her past job as a branch manager as it is generally performed.

In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following findings of fact: (1) a finding of fact as to the individual's RFC, (2) a finding of fact as to the physical and mental demands of the past job/occupation, and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. *See* SSR 82-62; *see also Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991) ("We therefore remand the matter for the ALJ to determine the demands of [the claimant's] job and, based on the evidence available, his ability to meet them during his insured status."); *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984) ("The administrative law judge was required to determine the physical demands of the particular type of sedentary work that this claimant had done and then compare those demands to her present capabilities.").

Here, the ALJ's decision merely cites the Dictionary of Occupational Titles listing branch manager as a sedentary job and the VE's testimony that the claimant is able to perform that job as generally performed. But the ALJ's decision neither addresses the specific duties involved as a branch manager nor assesses Claimant's ability to perform those specific tasks. Accordingly, the ALJ's decision is deficient under *Strittmatter* and *Nolen*. We therefore remand the matter for the

ALJ to determine the demands of Claimant's past relevant work and, based on the evidence available, her ability to meet them.

### III. Evidentiary Standard

Claimant further challenges the ALJ's decision by arguing that the ALJ applied an incorrect evidentiary standard in evaluating her subjective allegations. Doc. [12] at 10. An ALJ must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record. *See* 20 CFR § 404.953. "Preponderance of the evidence means such relevant evidence that as a whole shows that the existence of the fact to be proven is more likely than not." 20 C.F.R. § 404.901. Here, Claimant suggests that the ALJ departed from the preponderance of the evidence standard by finding Claimant's subjective allegations to be "not entirely consistent with the medical evidence and other evidence in the record." R. 26. But the ALJ's decision does not state that the ALJ employed a standard beyond the preponderance of the evidence. Nor does Claimant cite any authority to suggest that an ALJ violates the preponderance of the evidence standard by noting that the claimant's assertions are not supported by the record. Rather, this Court construes the ALJ's statement that a Claimant's subjective allegations were "not entirely consistent with the medical evidence and other evidence in the record" plainly. Therefore, this Court finds such a statement to be appropriate because the very definition of "preponderance of the evidence" requires an adjudicator to weigh all relevant evidence. *See* 20 C.F.R. § 404.901. Accordingly, the ALJ did not violate the preponderance of the evidence standard by noting that the Claimant's allegations were not entirely consistent with the record.

## Conclusion

For the foregoing reasons, this Court remands this case for further proceedings consistent with this Order.

**SO ORDERED.**

Dated: March 18, 2019

                                                         Sunil R. Harjani
                                                         United States Magistrate Judge